IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 29, 2020 Session

**REGINALD D. TUMLIN v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Hamilton County**
**No. 298339   Thomas C. Greenholtz, Judge**

_____

**No. E2019-00622-CCA-R3-PC**
_____

A Hamilton County jury convicted the Petitioner, Reginald D. Tumlin, of two counts of child abuse, one count of criminally negligent homicide, and one count of aggravated child neglect.  On appeal, this court affirmed the convictions.  *State v. Reginald D. Tumlin,* No. E2013-01452-CCA-R3-CD, 2014 WL 7073752, at *1 (Tenn. Crim. App., at Knoxville, Dec. 15, 2014), *perm. app. denied* (Tenn. May 14, 2015).  The Petitioner timely filed a petition for post-conviction relief, claiming that he received the ineffective assistance of counsel.  After a hearing, the post-conviction court denied relief.  The Petitioner maintains on appeal that his attorneys' representation was deficient and he was prejudiced by the deficiencies.  After review, we affirm the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR. and TIMOTHY L. EASTER, JJ., joined.

Clancy J. Covert, Chattanooga, Tennessee, for the appellant, Reginald D. Tumlin.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Senior Assistant Attorney General; M. Neal Pinkston, District Attorney General; and Charles D. Minor, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

A Hamilton County jury convicted the Petitioner of two counts of child abuse, one count of criminally negligent homicide, and one count of aggravated child neglect.  The jury's verdict was based upon evidence that the Petitioner's three-year-old son died from bowel perforations caused by blunt-force trauma to the abdomen, occurring eight to twelve hours before the victim died.  For the majority of the twelve hours leading up to

the victim's death, the Petitioner was the sole caretaker of the victim. Medical testimony established that, as a result of his injuries, the victim would have experienced severe pain, vomiting, and fever. Although the Petitioner identified symptoms alerting him to the injuries, he failed to act and the victim died. The Petitioner appealed his convictions, and this court affirmed the trial court's judgments. *Tumlin,* 2014 WL 7073752, at *1.

The Petitioner filed a petition seeking post-conviction relief based upon claims of ineffective assistance of counsel. As relevant to this appeal, he asserted that his attorney ("Trial Counsel") was ineffective for failing to present the three mothers of his children as character witnesses at trial. He also contended that Trial Counsel and his attorney on appeal ("Appellate Counsel") should have challenged the inconsistent verdicts.

At a hearing on the petition, the parties presented the following evidence: The Petitioner testified that he communicated to Trial Counsel his desire that his children's mothers, Duronda Syler, Mikosa Roseberry, and Raphael Ramsey, testify on his behalf at trial. The Petitioner recalled that Trial Counsel did not "get a chance to speak with them" but that Trial Counsel's private investigator spoke with these potential witnesses. Trial Counsel then told the Petitioner that he would present, at trial, the information the Petitioner sought from these three witnesses through the testimony of Shameka Greer, the Petitioner's current girlfriend. The Petitioner explained that he believed his children's mothers' testimony was important because these women could testify about how he interacted with his children.

The Petitioner testified that, while Ms. Greer did observe the Petitioner interact with his children, he believed her testimony was less persuasive because he did not have a child with Ms. Greer. The Petitioner agreed that Ms. Greer testified at trial but said that the testimony he wanted was not presented through her. The Petitioner confirmed that Trial Counsel did not explain to him why Ms. Syler, Ms. Roseberry, or Ms. Ramsey "were not called either before trial or during trial." The Petitioner testified that, after he was convicted at trial, he did not meet with Trial Counsel again until the sentencing hearing. At the sentencing hearing Trial Counsel did not present any witnesses on the Petitioner's behalf, and the Petitioner received an effective sentence of sixty years. The Petitioner believed that Ms. Siler's, Ms. Roseberry's, and Ms. Ramsey's testimony about his interactions with his children could have affected sentencing.

The Petitioner testified that following the sentencing hearing Trial Counsel filed a motion for new trial. After the filing but before the motion for new trial hearing, the Petitioner's family retained Appellate Counsel. The Petitioner agreed that he met with Appellate Counsel several times before the motion for new trial hearing, but he explained that they did not discuss the trial or what should be included in the amended motion for

new trial. The trial court denied the motion for new trial, and Appellate Counsel filed an appeal on the Petitioner's behalf.

When asked about his interactions with Appellate Counsel relevant to the appeal, the Petitioner stated "I really didn't have [any] communication with [Appellate Counsel]. My only communication with [Appellate Counsel] was to pay her her money [so] she can be assigned on to my case." The Petitioner said that he never discussed with Appellate Counsel the issues to be raised in the appeal.

The Petitioner testified that Trial Counsel and Appellate Counsel both failed to address, at sentencing or on appeal, what he believed to be the inconsistent verdicts in Count 3, criminally negligent homicide, and Count 4, aggravated child neglect.

On cross-examination, the Petitioner conceded that none of his children's mothers had firsthand knowledge of where he was the day before or on the day of the victim's death. He further agreed that these witnesses could not testify about his interaction with the victim around the time of the victim's death. He maintained, however, that they would have testified that he was a good father. The Petitioner agreed that these witnesses would have testified solely as character witnesses.

Mikosa Roseberry testified that she and the Petitioner had eight-year-old twins. Ms. Roseberry confirmed that Trial Counsel's private investigator spoke with her about the possibility of testifying at trial. Ms. Roseberry agreed that she was not at the Petitioner's place of residence during the time of the offenses concerning the victim. She stated that she had told the private investigator that she did not believe that the Petitioner was guilty. She did not speak with the private investigator again and never met Trial Counsel.

Appellate Counsel testified that she had thirty-two years of experience and had worked on hundreds of appeals. She stated that she communicated with the Petitioner both on the phone and on "numerous occasions" at the jail. After the trial court denied the motion for new trial, she continued to represent the Petitioner on appeal. She stated that she spoke with the Petitioner "on many occasions" about the appeal and also spoke with the Petitioner's family.

Appellate Counsel testified that she was aware of the Petitioner's issue with the inconsistency of the jury verdicts in Count 3 and Count 4. Appellate Counsel believed that she knew the law on this issue but nonetheless researched it, concluding that this issue would not prevail on appeal. As such, after consulting with Trial Counsel, she did not pursue this issue on appeal.

Trial Counsel testified that he employed a private investigator to help with the Petitioner's case. Trial Counsel confirmed that he did present witnesses at trial on the Petitioner's behalf. Specifically, he presented the Petitioner's girlfriend, Ms. Greer, who lived with the Petitioner at the time of the offenses. Trial Counsel's notes indicated that his private investigator spoke with Raphael Ramsey, the victim's mother. His notes also indicated that he had concern that, at trial, the State might ask if she inflicted the injuries on the child and when she said no, it would leave the jury consideration of only the Petitioner. Trial Counsel stated that he tried to avoid "creat[ing] a scenario where the only person that had exposure to the child during a relevant time that could have caused the injuries would be [the Petitioner]." He noted that neither Ms. Syler nor Ms. Roseberry "had contact during a relevant time." Additionally, the Petitioner had a prior domestic violence charge involving Ms. Syler which could have been revealed had Ms. Syler testified at trial.

Trial Counsel testified that he did not recall what research, if any, he did following the trial on inconsistent verdicts, but he stated that he was "generally familiar with the fact that juries can render inconsistent verdicts." He said that before the hearing on the motion for new trial he was replaced by Appellate Counsel so he never had the opportunity to argue any of the issues in the motion for new trial. Trial Counsel stated that he spoke with the Petitioner on two occasions, once by phone and once at the jail, about sentencing and potential appellate issues.

After hearing this evidence, the post-conviction court took the case under advisement and subsequently issued an order denying post-conviction relief. It is from this judgment that the Petitioner appeals.

## II. Analysis

On appeal, the Petitioner maintains that Trial Counsel was ineffective for failing to call Ms. Syler, Ms. Roseberry, and Ms. Ramsey to testify on his behalf. He also argues that Trial Counsel and Appellate Counsel should have challenged the inconsistency of the verdicts in Count 3 and Count 4. The State responds that Trial Counsel and Appellate Counsel made reasonable tactical decisions that did not prejudice the Petitioner.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2018). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2018). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be

resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged

conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

### A. Character Witnesses

The Petitioner asserts that Trial Counsel should have called the three mothers of his children to testify as character witnesses. The State responds that Trial Counsel's decision was a reasonable tactical decision that did not prejudice the Petitioner's defense.

This court has addressed the proof required when a petitioner alleges ineffective assistance of counsel on the basis of counsel's failure to present a witness at trial:

> When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing. As a general rule, this is the only way the petitioner can establish that (a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured to his

- 6 -

prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner. It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of whether further investigation would have revealed a material witness or what a witness's testimony might have been if introduced by defense counsel. The same is true regarding the failure to call a known witness. In short, if a petitioner is able to establish that defense counsel was deficient in the investigation of the facts or calling a known witness, the petitioner is not entitled to relief from his conviction on this ground unless he can produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called. Otherwise, the petitioner fails to establish the prejudice requirement mandated by *Strickland v. Washington*.

*Black v. State*, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990).

In its written order, the post-conviction court made the following findings with regard to this allegation of ineffective assistance of counsel:

In his first issue, [the Petitioner] asserts that Trial Counsel was ineffective in failing to call three witnesses to testify as to his character at trial: Ms. Doronda Siler; Ms. Raphael Ramsey; and Ms. Mikasa Roseberry. As [the Petitioner] proffered during the hearing, he had fathered a child with each of the witnesses, and he believed that each witness would testify favorably as to his character. In particular, the witnesses would have testified that he was a good father and treated his children well.

Of the three potential witnesses that [the Petitioner] identified, two of these witnesses were not presented at the post-conviction hearing. As the Court of Criminal Appeals has recognized, "it has been well-established law for more than a quarter century that a petitioner must provide some proof at the post-conviction hearing of what the petitioner claims trial counsel failed to present: witnesses, documents and other tangible evidence, etc. in order to prove prejudice under *Strickland*."

. . . .

In this case, [the Petitioner] has failed to present the testimony of Ms. Doronda Siler and Ms. Raphael Ramsey at the post-conviction hearing. As such, [the Petitioner] has failed to establish that either of these witnesses

would have testified favorably in support of his defense. To this end, the Court concludes that [the Petitioner] has failed to establish that Trial Counsel was ineffective for failing to call these two witnesses.

Of course, [the Petitioner] did present his third witness, Ms. Roseberry, at the post-conviction hearing. Once a petitioner presents a witness at a post-conviction hearing who he or she claims should have been called at the trial, the post-conviction court must determine whether the testimony would have been both admissible at trial and material to the defense. A petitioner may fail to establish ineffective assistance of counsel where, even if admissible, the witness's testimony would not have materially aided the petitioner's defense at the trial.

At the post-conviction hearing, Ms. Roseberry confirmed that she was not present with [the Petitioner] on the day of the events at issue, although she believed that he was not guilty of the crime charged. Importantly, although Ms. Roseberry testified that she told the defense investigator what she thought of [the Petitioner], she did not offer this same opinion at the post-conviction hearing. As such, the Court is not in a position to be able to evaluate the "character evidence" that would have been offered.

In any event, even if the Court were to assume that Ms. Roseberry would have testified that [the Petitioner] was a good father to his children—with the inference that his guilt was therefore less likely in this case—[the Petitioner] has failed to show that the results of the trial would have been different had this testimony been offered. The medical testimony in the case established that [the Petitioner]'s son,[ ], died from bowel perforations. These injuries were caused by blunt-force trauma to the abdomen that occurred eight to twelve hours before [the victim] died. For the majority of the twelve hours leading up to [the victim]'s death, [the Petitioner] was the sole caretaker of the victim, and the medical testimony established that [the victim] would have experienced severe pain, vomiting, and fever as a result of his injuries. Although [the Petitioner] identified the symptoms alerting him to [the victim's] injuries, he nevertheless failed to act, with the result that [the victim] did not survive his injuries.

The testimony offered by Ms. Roseberry would not have affected the conclusion that [the Petitioner]'s failure to seek immediate medical treatment for his son adversely affected his son's health and welfare. As such, the Court finds that Ms. Roseberry's testimony would not have been

sufficiently material to show that the result of the trial would have been different had she testified at trial. The Court respectfully declines to grant post-conviction relief on this ground.

(Footnotes omitted).

The evidence does not preponderate against the post-conviction court's findings of fact. The Petitioner complains that Trial Counsel did not present the testimony of three witnesses; however, he presented only Ms. Roseberry at the post-conviction hearing. Without the testimony of Ms. Syler and Ms. Ramsey, this court may not speculate as to what the witnesses might have said or whether Ms. Syler and Ms. Ramsey might have been credible. *See Black*, 794 S.W.2d at 758. As to Ms. Roseberry, the post-conviction court correctly noted that Ms. Roseberry's testimony was limited to her interactions with Trial Counsel and the private investigator and did not extend to what testimony she would have offered had she testified at trial. The post-conviction court also noted the significant evidence presented at trial against the Petitioner.

Accordingly, we conclude that the Petitioner has failed to show by clear and convincing evidence that Trial Counsel's representation was deficient because he did not call Ms. Roseberry, Ms. Syler, and Ms. Ramsey to testify at trial. The Petitioner is not entitled to relief as to this issue.

**B. Inconsistent Verdicts**

The Petitioner also complains that Trial Counsel and Appellate Counsel failed to challenge his inconsistent verdicts. If a claim of ineffective assistance of counsel is based on the failure to raise a particular issue, as it is in this case, then the reviewing court must determine the merits of the issue. *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004) (citing as example *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). Obviously, if an issue has no merit or is weak, then counsel's performance will not be deficient for failing to raise it. *Id*. Likewise, unless the omitted issue has some merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal. "When an omitted issue is without merit, the petitioner cannot prevail on an ineffective assistance of counsel claim." Id. (citing *United States v. Dixon*, 1 F.3d 1080, 1083 (10th Cir. 1993)).

Inconsistent verdicts are unassailable absent a legal insufficiency. *State v. Davis*, 466 S.W.3d 49, 73 (Tenn. 2015) (concluding that this rule applied when the jury, in one count, convicted the defendant of second degree murder, thereby establishing that he committed a knowing killing and then, on the second count, the jury acquitted the defendant of second degree murder, choosing instead to convict the defendant of reckless homicide). The Tennessee Supreme Court stated, "We continue to agree with the

significant majority of jurisdictions that inconsistent jury verdicts are not a basis for relief." *Id*. The verdicts are still subject, however, to analysis of whether the evidence is sufficient to sustain them. *Id*. at 72; *see also State v. Ike O. Nwangwa*, No. E2015-01086-CCA-R3-CD, 2016 WL 1615670, at *3 (Tenn. Crim. App., at Knoxville, Apr. 20, 2016), *no Tenn. R. App. P. 11 application filed*.

In the order denying relief, the post-conviction court made the following findings with regard to the Petitioner's allegation against Trial Counsel:

> [D]uring the post-conviction hearing, Trial Counsel testified that he was aware of the possibility of inconsistent verdicts, but he believed that the law permitted inconsistent verdicts. This belief was reasonable, as our Supreme Court has long held that inconsistent verdicts are permitted under Tennessee law:
>
> > Consistency in verdicts for multiple count indictments is unnecessary as each count is a separate indictment . . . . An acquittal on one count cannot be considered res judicata to another count even though both counts stem from the same criminal transaction. This Court will not upset a seemingly inconsistent verdict by speculating as to the jury's reasoning if we are satisfied that the evidence establishes guilt of the offense upon which the conviction was returned.
> >
> > The principle supporting the rule "recognizes the sanctity of the jury's deliberations and the strong policy against probing into its logic or reasoning, which would open the door to interminable speculation." To that end, each count in an indictment is treated as a separate indictment, and so long as there is sufficient evidence to support each of a defendant's convictions, the verdicts will be upheld.
>
> On direct appeal, the Court of Criminal Appeals examined the sufficiency of the evidence supporting [the Petitioner]'s conviction for aggravated child neglect, and it upheld the conviction. Moreover, in these proceedings, [the Petitioner] has not shown that his other conviction for criminally negligent homicide is not supported by the evidence. As such, [the Petitioner] has failed to show by clear and convincing evidence that, had an objection been made alleging inconsistent verdicts, the results of the proceedings would have been different. For these reasons, the Court respectfully declines to grant post-conviction relief on this ground.

(footnotes omitted).

We conclude that the evidence does not preponderate against the post-conviction court's findings. The evidence at the post-conviction hearing showed that Trial Counsel did not challenge the verdicts as inconsistent because he did not believe that this issue had merit. We agree that Trial Counsel's belief was reasonable in this regard. Moreover, the post-conviction court also considered this court's conclusions on direct appeal that there was sufficient evidence to support all of the Petitioner's convictions in concluding that the alleged inconsistent verdicts did not warrant relief. The Petitioner has failed to show that the omitted issue had merit and therefore cannot prove prejudice. Accordingly, the Petitioner is not entitled to post-conviction relief on this issue.

The Petitioner also credits Appellate Counsel with deficient performance for failing to raise the issue of inconsistent verdicts on appeal. The post-conviction court made the following findings in its order denying relief on this basis:

> At the post-conviction hearing, Appellate Counsel testified that she and Trial Counsel were in close contact and she was aware of the issue related to possibly inconsistent verdicts. However, she did not include the issue on appeal because she believed that the law did not permit [the Petitioner] to impeach the jury's verdict due to any alleged inconsistency.
>
> Analyzing the *Carpenter* factors, the issue of possible inconsistent verdicts would have faced arguably contrary authority on appeal, and to that end, it was a significantly weaker issue than those otherwise presented on appeal. Appellate Counsel, who has substantial appellate experience, reviewed the circumstances surrounding the issue, spoke with Trial Counsel, and made a strategic decision to omit this issue from presentation on appeal.
>
> The Court does not believe that Appellate Counsel's decision was unreasonable or that only an "incompetent attorney would adopt" such a course." . . . Appellate Counsel's belief that inconsistent verdicts are permitted under Tennessee law was reasonable and supported by long-established precedent. As such, the Court finds that Appellate Counsel made an appropriate strategic decision not to include a weak issue on appeal and that this strategic decision was not unreasonable under the circumstances.

Accordingly, the Court respectfully declines to grant post-conviction relief on this ground.

The evidence does not preponderate against the post-conviction court's findings. Appellate Counsel, with many years of experience in appellate work, made a strategic decision not to include an issue unlikely to prevail on appeal after consulting with Trial Counsel and researching the law. The Petitioner has not shown deficient performance or prejudice from the omitted issue and, therefore, is not entitled to relief as to this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we conclude that the post-conviction court properly denied post-conviction relief; therefore, the post-conviction court's judgment is affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE